UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | Criminal No. 19-10113-FDS |
| | ) | |
| LOUIS D. COLEMAN, III | ) | |

DEFENDANT'S MOTION TO DISMISS
OR IN THE ALTERNATIVE FOR A BILL OF PARTICULARS

Defendant, Louis D. Coleman, III, moves this Court for an order dismissing the indictment naming him as a defendant. As explained below, the indictment violates the Fifth and Sixth Amendments and Rule 7(c)(1) because it merely restates broad generically stated statutory text without making factual allegations. Because an insufficient indictment cannot be remedied with a bill of particulars, he moves to dismiss the indictment for failing to state an offense. Fed. R. Crim. P. 12(b)(3)(B)(v). If the Court denies the motion to dismiss, Mr. Coleman moves in the alternative for an order requiring the government to issue a bill of particulars.

Background

On April 4, 2019, a Grand Jury sitting in Boston alleged that

On or about February 24, 2019, in the District of Massachusetts, and elsewhere, the defendant,

Louis D. Coleman, III,

did unlawfully seize, confine, inveigle, decoy, kidnap, abduct, and carry away and hold, for ransom and reward and otherwise, Jassy Correia, when Ms. Correia was willfully transported in interstate commerce, and when Louis D. Coleman, traveled in interstate commerce in committing and in furtherance of the commission of offense, resulting in the death of Ms. Correia.

All in violation of Title 18, United States Code, Section 1201(a)(1).

(D.E. 15.)

The indictment made no other allegations of law or fact. Other background facts, not plead in the indictment but disclosed in the discovery process, are addressed in the analysis below.

Summary

An indictment may repeat statutory language when that language is narrowly drawn so that the defendant's alleged conduct is clear. However, an indictment that repeats broad generically stated statutory text without descending to specific factual allegations violates the Fifth and Sixth Amendments and Rule 7(c)(1) of the Federal Rules of Criminal Procedure. So is the case here. Although a defendant's conduct and proscribed purpose are the very essence of a kidnapping crime, the indictment against Mr. Coleman restates the broad generic language of the statute without alleging specific factual allegations concerning his conduct and purpose. The indictment, then, does not allege what Mr. Coleman did to "seize, confine, inveigle, decoy, kidnap, abduct, and carry away and hold" Ms. Correia. Nor does it make factual allegations regarding his purpose of "ransom, reward, or otherwise." Because a bill of particulars cannot save an invalid indictment, the Court should dismiss the indictment.

If the Court finds, contrary to Mr. Coleman's position, that the indictment is constitutionally sufficient, Rule 7(f) empowers the Court to direct the filing of a bill of particulars. Fed. R. Crim. P. 7(f). The Court should exercise its broad discretion and order the government to produce a bill of particulars. In this instance, video surveillance and other discovery disclosures show a consensual interaction as opposed to a forceable abduction that resulted in Ms. Correia's death.

I.    The indictment should be dismissed because it repeats broad generic statutory language without factual allegations.

For purposes of a motion to dismiss, the court must look to the face of the indictment and

assume that the factual allegations made therein are true. United States v. Sampson, 371 U.S. 75, 76 (1962); United States v. Stewart, 744 F.3d 17, 21 (1st Cir. 2014). When considering the face of the indictment the focus remains on the language used to charge the crimes. United States v. Sharpe, 438 F.3d 1257, 1263 (11th Cir. 2006). "Adherence to the language of the indictment is essential because the Fifth Amendment requires that criminal prosecutions be limited to the unique allegations of the indictment returned by the grand jury." United States v. Hitt, 249 F.3d 1010, 1016 (D.C. Cir. 2001).

An indictment is meant to satisfy at least two fundamental constitutional provisions. First, an indictment satisfies the Sixth Amendment's notice requirement by providing the nature and circumstances of the alleged crime so that the accused may meet the charge and defend himself. Russell v. United States, 369 U.S. 749, 763-64 (1962); Hamling v. United States, 418 U.S. 87, 117 (1974); United States v. Tomasetta, 429 F.2d 978, 979 (1st Cir. 1970). Second, an indictment satisfies the Fifth Amendment's edict that criminal cases be indicted by a grand jury and that citizens are not placed in jeopardy twice for the same offense. Stirone v. United States, 361 U.S. 212, 218 (1960).

To be constitutionally sufficient the indictment must first contain the elements of the alleged crime. Hamling, 418 U.S. at 117. The indictment may allege elements using "the words of the statute itself, [] [when], those words of themselves fully, directly, and expressly, without any uncertainty or ambiguity, set forth all the elements …" Russell, 369 U.S. at 765 (brackets added); Hamling, 418 U.S. at 117. If the statute uses broad generic terms, then the indictment must "descend to the particulars" and provide factual allegations that, when assumed true, would constitute the crime alleged. Russell, 369 U.S. at 765 (citing United States v. Cruikshank, 92 U.S. 542, 558 (1875); United States v. Simmons, 96 U.S. 360, 362 (1877); and United States v.

Hess, 124 U.S. 483, 487 (1888)). Otherwise said, an indictment that restates broad generically worded statutory text must marry the elements of the offense with factual allegations to satisfy the Fifth and Sixth Amendments. Rule 7(c)(1) is in accord; it requires the indictment make "a plain, concise, and definite written statement of the *essential facts constituting the offense charged*…" (emphasis added).

That a broad generically worded indictment must allege elements together with factual allegations is neither new nor novel. The Supreme Court spoke to this requirement nearly 150-years ago saying, "[The second object of an indictment is] to inform the court of the facts alleged, so that it may decide whether they are sufficient in law to support a conviction. For this, facts are to be stated, not conclusions of law alone." Cruikshank, 92 U.S. 542, 558 (1875). The Supreme Court has not repudiated this requirement, but instead, has repeated it: "[An indictment] must be accompanied with such a statement of the facts and circumstances as will inform the accused of the specific offense, coming under the general description, with which he is charged." Hamling, 418 U.S. at 117-118; Russell, 369 U.S. at 765.

An indictment may be dismissed as constitutionally insufficient when it merely repeats broad generically worded statutory text without descending to specific factual allegations. See Russell, 369 U.S. at 763-771; Tomasetta, 429 F.2d at 980-81. Federal courts, including the First Circuit, have understandably followed the Supreme Court and ordered dismissal of indictments that merely repeated broadly worded statutory text without specific factual allegations. Tomasetta, 429 F.2d at 979 (an indictment accusing the defendant of making threats by unstated means to an unnamed person on a particular day in a particular city requires dismissal); United States v. Nance, 533 F.2d 699, 701-703 (D.C. Cir. 1976) (reversing and dismissing where the indictment failed to specify what false pretenses were involved); United States v. Walsh, 194

F.3d 37, 44 (2nd Cir. 1999) ("The Indictment Clause of the Fifth Amendment requires that an indictment contain some amount of factual particularity to ensure that the prosecution will not fill in elements of its case with facts other than those considered by the grand jury."); United States v. Cecil, 608 F.2d 1294 (9th Cir. 1979) (reversing and dismissing where a drug conspiracy indictment tracked statutory language without facts or circumstances pertaining to the conspiracy); see United States v. Trinastich, 354 F. Supp. 54, 55 (W.D. Mo. Feb. 9, 1973) (dismissing a kidnapping indictment under Rule 7 that alleged the victim "had been unlawfully seized, confined, inveigled, decoyed, kidnapped, carried away and held by [the defendant] for reward or otherwise, that is for the purpose of sexual gratification"); United States v. Hillie, 227 F. Supp. 3d 57 (D.D.C. Jan. 5, 2017) (Jackson, D.J.) (dismissing seven child pornography related crimes for failing to make factual allegations).

Here, the indictment alleges broad generically stated statutory text without factual allegations and thereby violates the Fifth and Sixth Amendments and Rule 7(c)(1). The indictment alleges that Mr. Coleman "did unlawfully seize, confine, inveigle, decoy, kidnap, abduct, and carry away and hold, for ransom and reward and otherwise, Jassy Correia." (D.E. 15.) None of these broad generic terms is defined by the Kidnapping Act. The Supreme Court has said the "very essence" of a kidnapping crime is "the act of holding a kidnapped person for a proscribed purpose," and that a holding "necessarily implies an unlawful physical or mental restraint for an appreciable period against the person's will and with a willful intent so to confine the victim." Chatwin v. United States, 326 U.S. 455, 459 (1946). The Supreme Court has also said that the term "otherwise" in "ransom, reward, or otherwise" is broad enough to encompass any benefit the captor secures for himself. Gooch v. United States, 297 U.S. 124, 128 (1936).

The use of broad generic statutory terms requires factual specificity; but there are no facts

plead in this indictment. For example, although the defendant's conduct constitutes the "very essence" of the crime, Chatwin, 326 U.S. at 459, the indictment does not allege what conduct Mr. Coleman engaged in to "unlawfully seize, confine, inveigle, decoy, kidnap, abduct, and carry away and hold" Ms. Correia. Nor does the indictment allege facts amounting to a physical or mental restraint done for an appreciable period against Ms. Correia's will. And although a kidnapping crime requires the person be held for the prescribed purpose of "ransom, reward, or otherwise," the indictment alleges no ransom or reward. 18 U.S.C. § 1201(a)(1); Chatwin, 326 U.S. at 459. Absent facts of a ransom or reward, Mr. Coleman would normally assume the government is proceeding under the statute's broadly interpreted "otherwise" clause, but the indictment does not allege what benefit Mr. Coleman secured for himself.

Despite the breadth of the terms used, the indictment does not descend to the particulars by making specific factual allegations. Russell, 369 U.S. at 765 (citing Cruikshank, 92 U.S. at 558). This lack of specificity precludes Mr. Coleman from defending against the indictment and from twice being placed in jeopardy for the same offense. Moreover, the omissions would permit Mr. Coleman to be convicted "on the basis of facts not found by, and perhaps not even presented to, the grand jury which indicted him." Russell, 369 U.S. at 770. Finally, where First Amendment freedoms are not implicated, the statute must be evaluated on an as-applied, rather than on a facial, basis. Chapman v. United States, 500 U.S. 453, 467 (1991); United States v. Powell, 423 U.S. 87, 92 (1975). Without knowing what conduct the government alleges that Mr. Coleman engaged in, he cannot argue pretrial that the statute is unconstitutionally vague as applied to him. See Holder v. Humanitarian L. Project, 561 U.S. 1, 18-19 (2010) ("a plaintiff who engages in some conduct that is clearly proscribed cannot complain of the vagueness of the law as applied to the conduct of others); United States v. Howard, 2021 WL 3856290 at *14

(E.D. Wis. Aug. 30, 2021, Slip Op.) (Pepper, C.J.) (denying a defendant's vagueness challenge to 18 U.S.C. § 231(a)(3) in-part because the indictment alleged that defendant threw a brick at a police officer, which is clearly proscribed).

Although it is tempting, a bill of particulars cannot correct the indictment. "[I]t is a settled rule that a bill of particulars cannot save an invalid indictment." Russell, 369 U.S. at 770. "This underlying principle is reflected by the settled rule in the federal courts that an indictment may not be amended except by resubmission to the grand jury, unless the change is merely a matter of form." Id; United States v. Thomas, 444 F.3d 919, 922-923 (D.C. Cir. 1971) (reversing because the indictment lacked factual particularity and finding the error could not have been remedied by a bill of particulars); Hillie, 227 F. Supp. 3d at 80-82 (dismissing an indictment and holding that a bill of particulars was no remedy). As a result, the indictment should be dismissed.

II.     <u>If the Court does not dismiss the indictment, it should order the government to produce a bill of particulars.</u>

If the Court finds, contrary to Mr. Coleman's position, that the indictment need not be dismissed, Mr. Coleman requests the Court order the government to produce a bill of particulars. Rule 7(f) "specifically empowers the trial court to direct the filing of a bill of particulars and gives the trial court "very broad discretion in ruling upon requests for such bills." Will v. United States, 389 U.S. 90, 98-99 (1967). "The purpose of a bill of particulars is to provide the accused with detail of the charges against him where necessary to enable him to prepare his defense, to avoid surprise at trial, and to protect against double jeopardy." United States v. Paiva, 892 F.2d 148, 154 (1st Cir. 1989); United States v. Sepulveda, 15 F.3d 1161, 1192-93 (1st Cir. 1993) (holding that a motion for a bill of particulars should be granted "only if the accused, in the absence of a more detailed specification, will be disabled from preparing a defense, caught by

unfair surprise at trial, or hampered in seeking the shelter of the Double Jeopardy Clause").

  The very essence of a kidnapping charge requires conduct on the defendant's part to "unlawfully seize, confine, inveigle, decoy, kidnap, abduct, and carry away and hold [another], for ransom reward or otherwise," but the indictment alleged no conduct and no proscribed purpose, whether ransom, reward, or otherwise. The government has disclosed vast amounts of discovery that Mr. Coleman has strived to review and analyze. Despite the effort, he remains unsure whether the government has alleged that Ms. Correia was seized, confined, inveigled, decoyed, kidnapped, or abducted. Being seized or abducted is not the same as being confined. To inveigle is not the same as to decoy, and both are altogether different from being seized, abducted, or confined. Moreover, neither the indictment nor discovery makes clear whether Mr. Coleman's proscribed purpose was "ransom, reward, or otherwise".

  Discovery review and analysis has not much clarified these matters. Much of discovery suggests a consensual encounter rather than a forceable abduction, a decoy, or an inveiglement. Discovery included hours of surveillance footage taken from inside and outside the Venu nightclub in downtown Boston. Neither the video footage nor any other discovery suggested that Mr. Coleman encountered Ms. Correia inside the nightclub, that he had planned the crime or stalked her whereabouts beforehand, or that he had known of Ms. Correia's existence before encountering her on the sidewalk.

  Video surveillance outside the nightclub recorded the moment when Mr. Coleman and Ms. Correia first met on the sidewalk. Video showed Ms. Correia was pushed from an Uber vehicle, which caused her to fall torso first onto the sidewalk. Two seconds later, at about 2:16 a.m., Ms. Correia picked herself up from the sidewalk, where Mr. Coleman approached and offered his hand. The encounter appeared friendly with Ms. Correia under no apparent distress

from Mr. Coleman's interaction with her. Thereafter, Ms. Correia and Mr. Coleman walked down the sidewalk together in the February cold. Ms. Correia had no shoes on her feet, but she walked on her own under no apparent threat of harm. After walking some distance on her own, Mr. Coleman carried Ms. Correia piggyback style, presumably to protect her feet from the cold concrete. The two arrived at a red sedan, and Ms. Correia entered on the passenger side without Mr. Coleman's assistance, whether forced or friendly. The red sedan departed with Mr. Coleman driving. About two hours later, surveillance video from Mr. Coleman's apartment complex in Providence, Rhode Island showed Mr. Coleman carrying Ms. Correia's body into the building.

The very essence of a kidnapping charge requires conduct on the defendant's part to "unlawfully seize, confine, inveigle, decoy, kidnap, abduct, and carry away and hold [another], for ransom reward or otherwise," but with several months to go until trial, Mr. Coleman does not know what conduct and proscribed purpose the government has alleged. He should not learn for the first time during opening statements what conduct and what proscribed purpose the government has alleged. If the Court does not dismiss the indictment, it should order a bill of particulars be furnished.

<u>Conclusion</u>

For the reasons stated above, the indictment should be dismissed, or in the alternative, the Court should order the government to produce a bill of particulars.

LOUIS D. COLEMAN, III
By his attorneys,

*/s/ Wade Zolynski*
Wade Zolynski
  MT Bar No. 6088
*/s/ Jane Peachy*
Jane Peachy
  B.B.O. No. 661394
Federal Defender Office
51 Sleeper Street
Boston, MA  02210
Tel: 617-223-8061

*/s/David P. Hoose*
David P. Hoose
  B.B.O. No. 239400
Sasson, Turnbull, Ryan & Hoose
100 Main Street
Northampton, MA 01060
Tel: 413-586-4800 Ext. 107

<u>CERTIFICATE OF SERVICE</u>

     I, Wade Zolynski, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) on December 2, 2021.

/s/ Wade Zolynski
Wade Zolynski