UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| V. | ) | Criminal No. 19-10113-FDS |
| | ) | |
| LOUIS D. COLEMAN, III | ) | |

**DEFENDANT'S OPPOSITION TO THE GOVERNMENT'S MOTION *IN LIMINE* TO INTRODUCE JASSY CORREIA'S STATEMENTS**

Defendant, Louis Coleman, III, hereby opposes the government's motion *in limine* to introduce statements made by Jassy Correia regarding her intentions for the weekend of February 23-24 because those statements are not relevant and are more prejudicial than probative.

**RELEVANT BACKGROUND**

In February of 2019, Ms. Correia asked the case manager at the emergency shelter where she was living for a weekend pass to stay away from the shelter on the nights of February 22 and 23 to celebrate her birthday. Ms. Correia dropped her 2-year-old daughter off with her daughter's grandmother for the weekend, telling her that she would return to pick her daughter up sometime on Sunday, February 24. Before going to Venu, a nightclub, on February 23, Ms. Correia left personal items at Yvania Mondesir's home and arranged to spend the night of with her. After leaving the club and getting into an altercation with Ms. Mondesir, Ms. Correia climbed into the front seat of an Uber minivan that she had not called. According to the government, the Uber driver would testify that Ms. Correia asked him to give her a ride home. When she would not leave, the Uber driver pushed Ms. Correia out of the minivan.

Mr. Coleman and Ms. Correia met for the first time just after she toppled from the Uber. The two talked briefly and then walked together to his car. During part of the walk, Mr. Coleman carried Ms. Correia piggyback-style because she was not wearing shoes. When the two arrived at

his car, Mr. Coleman put Ms. Correia down on the passenger's side of the vehicle. She got into the car as he walked around to the driver's side. At no point did Ms. Correia seem to be under any duress while walking with Mr. Coleman, and she entered the vehicle of her own volition.

Sometime after leaving together, a sudden and violent interaction occurred in the car and Mr. Coleman was forced to defend himself, resulting in Ms. Correia's death. Surveillance video taken from outside Mr. Coleman's apartment building in Providence, Rhode Island showed that he arrived home about two hours later. The video shows him dragging Ms. Correia's seemingly lifeless body into his apartment.

## ARGUMENT

### I. Jassy Correia's Statements are Not Relevant Under Rule 401

The government has moved to introduce statements that Ms. Correia made to her daughter's grandmother, a case manager at the shelter where she was living, Ms. Mondesir, and an Uber driver to demonstrate her intent and state of mind when she got into Mr. Coleman's car. The government argues that the statements and Ms. Correia's state of mind are relevant for the purpose of establishing that Mr. Coleman unlawfully inveigled Ms. Correia to come into his car by leading her to believe "he would be taking her home" and "not assaulting her and transporting her across state lines to his apartment in Rhode Island." Motion at 3. However, Ms. Correia's statements are not relevant for the purpose identified by the government, as these statements do not make it less probable that Ms. Correia willingly got into Mr. Coleman's car or more probable that Mr. Coleman engaged in any sort of deception or misrepresentation to get her to do so. Therefore, they are not admissible under Fed. R. Evid. 401.

Video evidence shows Ms. Correia talking with Mr. Coleman in a friendly way, walking several blocks to his car, and then opening his passenger door and getting into his car of her own

volition. The statements made by Ms. Correia that the government has motioned to introduce in no way challenge the reasonable conclusion that Ms. Correia willingly left the nightclub area with Mr. Coleman.

The government argues that Ms. Correia's statements demonstrate that she did not get into the car believing she would be assaulted or transported across state lines, but no reasonable person would doubt that. However, in order to establish that Mr. Coleman inveigled Ms. Correia, which the government argues is its purpose for introducing this evidence, the statements must make it more probable not that Ms. Correia intended to return home soon, but rather that Mr. Coleman induced Ms. Correia to get into his car through some sort of deception or misrepresentation. Ms. Correia's statements to her daughter's grandmother, her case manager, Ms. Mondesir, and the Uber driver shed no light on what Mr. Coleman intended to do or where he intended to take Ms. Correia when they left the area of the nightclub in the early morning hours of February 24. Mr. Coleman's intentions are what are at issue in determining whether Ms. Correia was inveigled, and Ms. Correia's statements will not assist the jury in determining whether the first element of the charge of kidnapping resulting in death, 18 U.S.C. § 1201(a)(1), has been met. Therefore, these statements are not relevant and are inadmissible under Fed. R. Evid. 401.

## II.   Jassy Correia's Statements are Not Admissible Under Rule 403

If it is found that Ms. Correia's statements regarding her intentions for the weekend of February 23-24 are relevant under Fed. R. Evid. 401, then they are inadmissible under Fed. R. Evid. 403 because their introduction would be more prejudicial than probative.

As stated above, there is no reason to doubt that Ms. Correia intended to return home or to a friend's house soon after meeting Mr. Coleman, nor is there reason to doubt that she planned

to reunite with her daughter and return to the emergency shelter. Furthermore, the statements that the government seeks to introduce are entirely consistent with the evidence that Ms. Correia entered into Mr. Coleman's car of her own volition given her recent altercations with Ms. Mondesir and the Uber driver. Therefore, the probative value of these statements, if they are found to be relevant, is extremely limited.

However, admission of these statements would present a substantial risk of unfair prejudice. If these statements were introduced at trial, Ms. Correia's daughter's grandmother, friend, and case manager would have the opportunity to testify to her character and the challenging circumstances she dealt with as a single mother and a survivor of domestic violence. Mr. Coleman's opposition to the government's introduction of Ms. Correia's statements is in no way intended to belittle the significant adversities she faced. However, those details are unrelated to her death or the crime with which Mr. Coleman has been charged. Admission of Ms. Correia's statements regarding her plans on the weekend of February 23-24 would serve to prejudice the jury in favor of Ms. Correia by garnering sympathy for her hardships. It is the government's backdoor attempt to introduce a parade of witnesses who knew Ms. Correia personally and to paint a picture of Ms. Correia as a sympathetic and responsible person, despite the fact that such a characterization might reasonably be questioned. Consequently, that evidence would unfairly prejudice the jury against Mr. Coleman for reasons unrelated to the allegations against him.

Furthermore, admission of all statements identified by the government in their motion *in limine* would be cumulative, as the government seeks to introduce all for the common purpose of establishing that Ms. Correia had the intention of returning home or to a friend's house when she got into Mr. Coleman's car.

Because Ms. Correia's statements regarding her intentions for the weekend of February 23-24 are, if relevant, of very limited probative value but present a substantial risk of unfair prejudice and are cumulative in nature, they are not admissible under Fed. R. Evid. 403.

## CONCLUSION

For the foregoing reasons, Ms. Correia's statements to her case manager, her daughter's grandmother, Ms. Mondesir, and the Uber driver should not be admitted.

LOUIS D. COLEMAN, III
By his attorneys,

*/s/ Jane Peachy*
Jane Peachy
B.B.O. No. 661394

*/s/ Wade Zolynski*
Wade Zolynski
MT Bar No. 6088
Federal Defender Office
51 Sleeper Street
Boston, MA  02210
Tel: 617-223-8061

*/s/David P. Hoose*
David P. Hoose
B.B.O. No. 239400
Sasson, Turnbull, Ryan & Hoose
100 Main Street
Northampton, MA 01060
Tel: 413-586-4800 Ext. 107

CERTIFICATE OF SERVICE

I, Jane Peachy, hereby certify that this document filed under seal will be sent by e-mail to counsel for the government on April 11, 2022.