UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES of AMERICA ) | Criminal No. |
| ) | 19-10113-FDS |
| v. ) | |
| LOUIS D. COLEMAN, III, ) | |
| Defendant. ) | |

**ORDER ON GOVERNMENT'S MOTION FOR RESTITUTION**

**SAYLOR, C.J.**

On June 1, 2022, following a three-week trial, defendant Louis D. Coleman, III was convicted of kidnapping resulting in death, in violation of 18 U.S.C. § 1201(a)(1). On October 11, 2022, this Court sentenced Coleman to a mandatory term of life in prison. Pursuant to 18 U.S.C. § 3664(d)(5), at the sentencing the Court deferred the determination of the amount of restitution, if any, to be paid to the family of the victim, Jassy Correia.

Since that time, the parties have conducted discovery on the issue of restitution, the government has submitted an expert report, and the parties have briefed the issues. For the following reasons, the Court will order restitution in the amount of $61,362.68, under the terms set forth below.

**I.**   **Legal Standard**

Under the Victim and Witness Protection Act ("VWPA"), 18 U.S.C. §§ 3663, 3664 (1994), the court may order that a defendant convicted of an offense under Title 18 "make restitution to any victim of such offense, or if the victim is deceased, to the victim's estate."  18

U.S.C. § 3663(a)(1)(A).[1]  "An order of restitution made pursuant to this section shall be issued and enforced in accordance with section 3664."  18 U.S.C. § 3663(d).  "The purpose behind the statute is to 'insure that the wrongdoer make good, to the degree possible, the harm he has caused to the victim.'"  *United States v. Acosta*, 303 F.3d 78, 86 (1st Cir. 2002) (alterations omitted) (quoting *United States v. Vaknin*, 112 F.3d 579, 582 (1st Cir. 1997)).

## II.     Analysis

There are three levels to the analysis:  whether to award restitution at all; if so, the amount of any such award; and if so, the manner of payment.

### A.     Whether to Award Restitution

Under the VWPA, whether to award restitution is within the discretion of the district court.  In determining whether to order restitution, the district court is required to consider (1) "the amount of the loss sustained by each victim as a result of the offense"; (2) "the financial resources of the defendant, [and] the financial needs and earning ability of the defendant and the defendant's dependents"; and (3) "such other factors as the court deems appropriate."  18 U.S.C. § 3663(a)(1)(B)(i).  The statute also provides that the court may decline to order restitution where "the complication and prolongation of the sentencing process resulting from the fashioning of an order of restitution under this section outweighs the need to provide restitution to any victims . . . ."  *Id.* § 3663(a)(1)(B)(ii).

Defendant contends that the Court should not order restitution because he is currently

---

[1] The Mandatory Victims Restitution Act ("MVRA") mandates restitution where a defendant is convicted of a "crime of violence," as defined under 18 U.S.C. § 16, "in which an identifiable victim or victims has suffered a physical injury or pecuniary loss."  18 U.S.C. § 3663A(c)(1).  The First Circuit has not yet determined whether kidnapping resulting in death—which could be committed, for example, if the kidnapped victim died in an automobile accident—is a "crime of violence" within the meaning of the statute.  *Cf. United States v. Rodriguez-Santos*, 56 F.4th 206, 218-19 (1st Cir. 2022) (declining to resolve question in case concerning analogous language in 18 U.S.C. § 924).  The Court need not resolve the question, because the government seeks restitution only under 18 U.S.C. § 3663.

2

indigent and unlikely to earn any significant amount of money while incarcerated. To the extent that any of his prison earnings are used to pay restitution, his family will have to provide him additional funds for personal necessities in prison. The burden of paying restitution, therefore, would effectively be borne by his mother or other family members. Furthermore, defendant contends that the Court should decline to award restitution because the Correia family has already raised $150,305 through a GoFundMe campaign to cover travel costs associated with the trial, and restitution would therefore result in double payment.

The government acknowledges that a restitution order in this case will be "largely symbolic," given defendant's limited financial prospects. Nevertheless, it contends that restitution is appropriate to ensure that, were defendant to receive additional financial resources in the future, the funds would be available to support Correia's daughter.

The Court agrees that it is unlikely that defendant will ever earn more than token amounts of income while incarcerated. Nonetheless, it is at least possible that his circumstances might change; for example, a relative might pass away, and he might come into an inheritance. *See United States v. Vaknin*, 112 F.3d 579, 592 (1st Cir. 1997) ("A defendant's impoverishment today is no assurance of future poverty, and, hence, present impecuniousness is not a bar to the imposition of restitution."); *United States v. Phaneuf*, 91 F.3d 255, 264 (1st Cir. 1996) ("Restitution awards may be imposed in order to make victims whole should the defendant become able to pay in the future."); *United States v. Lilly*, 80 F.3d 24, 28-29 (1st Cir. 1996) ("Nor does the statute require a record basis for finding that a defendant can presently pay restitution. The prospect of future income is sufficient."). Under the circumstances, the Court concludes that an order of restitution is appropriate.

### B. Amount of Restitution

Where the Court decides to order restitution, it "shall order restitution to each victim in the full amount of each victim's losses as determined by the court and without consideration of the economic circumstances of the defendant." 18 U.S.C. § 3664(f)(1)(A). The government bears the burden of demonstrating the amount of a victim's losses by a preponderance of the evidence. 18 U.S.C. § 3664(e). "The Court may not order restitution for losses that are unsubstantiated or speculative." *United States v. Williams*, 946 F. Supp. 2d 112, 117 (D.D.C. 2013).

The government seeks restitution for Correia's funeral expenses, her family's travel expenses associated with the trial, and her projected lost earnings. As an initial matter, defendant contends that the court should factor in his financial circumstances in determining the amount of restitution. While at least one court has held that approach to be appropriate, *see United States v. Williams*, 353 F. Supp. 3d 14, 26 (D.D.C. 2019), most courts that have addressed the question have concluded that the financial circumstances of the defendant may be considered "in deciding *whether* to order restitution and in setting the defendant's payment *schedule*, but not in setting the total *amount* of restitution due to the victims." *United States v. Sizemore*, 850 F.3d 821, 827 (6th Cir. 2017) (emphasis added); *see also United States v. Diaz*, 865 F.3d 168, 180 (4th Cir. 2017), as amended (July 31, 2017); *United States v. Day*, 418 F.3d 746, 756 (7th Cir. 2005). *See also United States v. Leahy*, 438 F.3d 328, 338 (3d Cir. 2006). While the First Circuit has not yet addressed the issue, the latter approach is more consistent with the statutory text. *Compare* 18 U.S.C. § 3663(a)(1)(B)(i) ("[I]n determining whether to order restitution" the court "shall consider . . . the financial resources of the defendant.") *and* 18 U.S.C. § 3664(f)(2) ("[T]he court shall . . . specify . . . the manner in which . . . the restitution is to be paid, in consideration of []

the financial resources and other assets of the defendant.") *with* 18 U.S.C. § 3664(f)(1)(A) ("[T]he court shall order restitution . . . in the full amount . . . without consideration of the economic circumstances of the defendant.").

The Court will therefore address each proposed category of restitution without considering defendant's ability to pay.

### 1. Funeral Expenses

In the case of an offense resulting in the death of a victim, the court may order that the defendant "pay an amount equal to the cost of necessary funeral and related services." *Id.* § 3663(b)(3). The Correia family received $8,800 from the Massachusetts victim's compensation fund to cover funeral expenses.

The VWPA provides that "[i]n no case shall the fact that a victim has received or is entitled to receive compensation with respect to a loss from insurance or any other source be considered in determining the amount of restitution." *Id.* § 3664(f)(1)(B). However, where "a victim has received compensation from insurance or any other source with respect to a loss, the court shall order that restitution be paid to the person who provided or is obligated to provide the compensation, but the restitution order shall provide that all restitution of victims required by the order be paid to the victims before any restitution is paid to such a provider of compensation." 18 U.S.C. § 3664(j)(1).

Defendant does not object to restitution for those costs. Accordingly, the Court will order that restitution be paid in the amount of $8,800 to the Massachusetts victim's compensation fund, provided that full restitution is first paid to Correia's daughter.

### 2. Travel Costs

"[I]n any case," the court may order that the defendant "reimburse the victim for lost income and necessary child care, transportation, and other expenses related to participation in the investigation or prosecution of the offense or attendance at proceedings related to the offense." 18 U.S.C. § 3663(b)(4).

The Correia family received $2,562.68 from the federal Crime Victims Fund to cover travel costs associated with attending court proceedings in this case. Defendant contends that restitution for those costs is unnecessary given the more than $150,000 raised through the GoFundMe campaign. Again, the VWPA is clear that "[i]n no case shall the fact that a victim has received or is entitled to receive compensation with respect to a loss from insurance or any other source be considered in determining the amount of restitution." *Id.* § 3664(f)(1)(B). Despite defendant's argument that this provision was clearly intended to cover only "recovery from insurance companies or other entities determined to have a legal obligation to make payments," the broad phrase "or any other source" is most reasonably read to include solicited donations.

Accordingly, the Court will order that restitution be paid in the amount of $2,562.68 to the federal Crime Victims Fund, again provided that full restitution is first paid to Correia's daughter.

### 3. Lost Income

In the case of an offense resulting in bodily injury to a victim, the order may require that the defendant "reimburse the victim for income lost by such victim as a result of such offense." 18 U.S.C. § 3663(b)(2)(C). Courts have interpreted that language to allow for restitution for future lost income to deceased victims. *See, e.g., United States v. Williams*, 353 F. Supp. 3d 14,

23 (D.D.C. 2019); *United States v. Oslund*, 453 F.3d 1048, 1063 (8th Cir. 2006) (analyzing analogous language under the MVRA); *United States v. Cienfuegos*, 462 F.3d 1160, 1162-69 (9th Cir. 1006) (same).

The government requests that the Court order restitution in the amount of $621,414 to compensate for Correia's lost income and the resulting financial loss to her daughter. The government bases its request on a report prepared by its economic expert, Thomas A. Barocci. In calculating Correia's lost income, Barocci considered her personal, work, and educational history, as well as her future plans, and concluded that "Ms. Correia was a hard-working and reliable individual who was doing her best to be financially independent and provide for her daughter despite having been faced with a number of challenges at her young age." (Barocci Report at 7). Barocci calculated Correia's expected earnings based on the work life expectancy for a 23-year-old Hispanic female with an associate's degree. (*Id.* at 7-8). He then factored in expected receipt of welfare benefits, payment of taxes, and personal consumption to estimate economic losses to her heirs under two scenarios: where Correia remained single ($390,553) and where she married and had a second child ($621,414). (*Id.* at 7-9, 16).

Defendant responds that the government's estimate is based upon entirely unrealistic assumptions concerning Correia's work experience and future education and employment prospects. Specifically, he contests Barocci's assumption that Correia would obtain an associate's degree, given that she had not even obtained her G.E.D. and had only recently (and casually) expressed interest in pursuing post-secondary education. He also disputes Barocci's characterization of Correia's employment history, which is spotty, and her job performance when she was employed. He notes that Correia's history of mental illness, substance abuse, and disorderly conduct all call into question her ability to maintain consistent employment, and

7

render Barocci's estimates of her future earning capacity "inherently speculative." Finally, the projection that Correia would marry and have a second child is likewise an assumption that is entirely without any evidentiary basis.

The Court agrees that Barocci's conclusions are based on a host of improper speculative assumptions. Even the low end of the government's estimate ($390,553) is based on the assumption that Correia would obtain an associate's degree, which is conjectural, to say the least. A calculation based on speculative lost income cannot form the basis of a restitution order. *See Cienfuegos*, 462 F.3d at 1161 ("[R]estitution for future lost income may be ordered under the MVRA so long as it is not based upon speculation, but is reasonably calculable."); *United States v. Oslund*, 453 F.3d 1048, 1063 (8th Cir. 2006).

This leaves the Court in a difficult position. On the one hand, the government's proposed calculation is largely grounded in speculation; furthermore, the Court is disinclined to prolong matters further by requiring a revamped analysis. Again, the statute specifically states that the court may decline to order restitution where "the complication and prolongation of the sentencing process resulting from the fashioning of an order of restitution under this section outweighs the need to provide restitution to any victims . . . ." 18 U.S.C. § 3663(a)(1)(B)(ii).

On the other hand, it seems highly unlikely that Correia—who was only 23 at the time of her death—would have had *zero* lifetime earnings over the ensuing decades of her working life, had she not been killed. According to the evidence, it appears that she had earned about $5,000 over five months while working at a restaurant and about $7,000 over seven (non-consecutive) months while working at a retail store. (Opp'n Exs. C, D). Based on that employment record, it seems likely, at a bare minimum, that she was likely to have earned at least $6,000 a year going forward. Taking into account the adjustments made by the government's expert, Barocci (such

as the amount of her earnings that she would likely consume, the expected effect of taxes, and the present value of her income stream), the Court is reasonably confident that the lost income—that is, the amount available to her daughter had she lived—would have been not less than $50,000. *See United States v. Naphaeng*, 906 F.3d 173, 182 (1st Cir. 2018) (holding that "the calculation of a restitution order does not demand metaphysical certainty," only that the "analysis [be] record-based and constitute[] a fair appraisal of actual losses," and "rest[] on more than a modicum of reliable evidence").

Under the circumstances, the Court will order lost-earnings restitution in the amount of $50,000. To be clear, that is not the value of her life, which of course is priceless; rather, it is a projection of that portion of her lost income that was likely to have been available to her daughter had she not been killed.

### C.     **Manner of Repayment**

"Upon determination of the amount of restitution owed to each victim, the court shall . . . specify in the restitution order the manner in which, and the schedule according to which, the restitution is to be paid, in consideration of (A) the financial resources and other assets of the defendant, including whether any of these assets are jointly controlled; (B) projected earnings and other income of the defendant; and (C) any financial obligations of the defendant; including obligations to dependents." 18 U.S.C. § 3664(f)(2).

Here, where defendant's only income comes from money he earns while incarcerated and any funds sent to him by family or friends, immediate payment of restitution is unrealistic. Defendant's mother has apparently worked two jobs to provide him with enough funds to maintain contact with his family, and has two other children who rely on her for support. Defendant is currently incarcerated at USP Victorville, which lacks a UNICOR program that

could allow defendant to earn larger amounts of money than typical prison work assignments. Finally, defendant's sentence of life in prison makes it unlikely he will ever hold a full-time job or earn significant income in the future.

Given the likelihood that the impact of a restitution order might otherwise be borne by defendant's family members, the Court will require that restitution be paid on a schedule consistent with the minimum requirements for inmates without UNICOR work assignments set by the Bureau of Prisons Inmate Financial Responsibility Program. 28 C.F.R. § 545.11(b)(1). However, in order to allow for the possibility of a change in circumstances, the Court will order that the repayment schedule may be adjusted should future events so warrant.

Accordingly, the Court will order that defendant pay a minimum $25 per quarter toward his restitution obligations, and allow for the possibility of a revised payment schedule in the event of a change in circumstances.

### III. Conclusion

For the reasons stated above, it is hereby ORDERED

1. that defendant Louis D. Coleman, III shall pay restitution in the amount of $8,800 to the Massachusetts victim's compensation fund, provided that full restitution is first paid to Correia's daughter; $2,562.68 to the federal Crime Victims Fund, provided that full restitution is first paid to Correia's daughter; and $50,000 to Correia's daughter. All payments owed to Correia's daughter shall be made to her legal guardian, for the daughter's benefit, as long as her daughter has not reached the age of 18;

2. that during the period of incarceration, and absent a material change in his financial circumstances, defendant shall pay a minimum of $25 per quarter toward

        the total financial obligations in this Order;

3. that if defendant has a material change in his financial circumstances (including, but not limited to, increased income earned if he is released from prison and rejoins the work force; income earned while in prison, from any source; and assets received through inheritance, gifts, or otherwise), the Court may alter that payment schedule accordingly;

4. that defendant shall notify the Court, the Attorney General, and the Probation Office of any material change in his economic circumstances that might affect his ability to pay restitution;

5. that the government is not precluded from identifying and applying other assets of defendant to satisfy the restitution obligations imposed by this Order; and

6. that the Clerk of the Court shall prepare an Amended Judgment for the Court's signature.

**So Ordered.**

Dated: March 15, 2023

/s/ F. Dennis Saylor IV  
F. Dennis Saylor IV  
Chief Judge, United States District Court